IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ROBERT GARY MOORE, #402576,  *

Plaintiff,  *

      v.  *  CIVIL ACTION NO. JKB-17-1919

WARDEN BISHOP  *
JOHN DOE COMMISSIONER (DOC)
WEXFORD NURSE SIERRA NOLAN  *
KRISTA SELF, CFNP
WEXFORD HEALTH SOURCES, INC.  *
RYAN BROWNING, NURSE
    *

Defendants.
                             *****

## **MEMORANDUM**

Pending before the court are a motion to dismiss or, in the alternative, for summary judgment filed by defendant Bishop (ECF No. 12), Robert Gary Moore's opposition (ECF No. 15), and a motion to dismiss or, in the alternative, for summary judgment filed by defendants Nolan, Browning, Self, and Wexford Health Sources, Inc. (medical defendants) (ECF No. 21),[1] Moore's opposition (ECF No. 23), and the medical defendants' reply (ECF No. 26). In addition, Moore has filed a motion to appoint counsel. ECF No. 7. Upon review of the pleadings filed, the court finds a hearing in this matter unnecessary. *See* Local Rule 105.6 (D. Md. 2016). For the reasons stated below, defendants' dispositive motions will be GRANTED.

---

[1] The medical defendants have also filed two separate motions to strike. The first motion requests that Moore's first set of interrogatories be stricken. ECF No. 17. The second motion seeks to have Moore's first request for an injunction order stricken. ECF Nos. 18 & 19. Moore has filed an opposition. ECF No. 20. For reasons to follow, the motions to strike shall be denied; instead, the Court will construe Moore's filings as motions and deny them.

## I. Complaint Allegations

Plaintiff Robert Gary Moore, an inmate currently confined at the North Branch Correctional Institution ("NBCI") in Cumberland, Maryland, filed this complaint alleging that on January 16, 2016, he complained to Nurse Sierra Nolan about severe breathing problems and a knot on the back of his left leg that had grown and was causing him severe pain. Moore states that Nolan "delayed" his treatment by telling him to submit a sick-call slip. He contends that his conditions could have been fatal and Nolan failed to follow proper protocols. ECF No. 1, p. 4.[2] Moore alleges that the next day he submitted a sick-call slip and administrative remedy procedure (ARP) grievance. He claims that the sick-call slip was destroyed,[3] but he was interviewed by Ryan Browning on January 26, 2016. Moore contends that Browning informed him that "if he sign[ed] off [the ARP], he would make sure [that Moore] was seen." Moore refused to sign off on the ARP. *Id*., p. 5.

Moore asserts that he filed an ARP with the Commissioner to address the proper protocols when an inmate is experiencing severe breathing problems. He argues that the Commissioner and Warden Bishop failed to "assist plaintiff's conditions by proper investigation" as medical personnel continued to give them false and altered medical documents stating that Moore had not experienced abnormal swelling on his body. *Id*., pp. 5-6.

Finally, Moore accuses Nurse Self of falsifying documents by stating that he had no joint or bone pain or swelling on March 17, 2016, and by failing to document that he "had been suffering with sharp chronic needle pains going through his leg and big toe since January 16,

---

[2] All citations to pleadings refer to the electronic pagination.

[3] Moore claims that sick-call slips were also destroyed on June 3, 2016, and in August of 2016. ECF No. 1, p. 5.

2016 until now." ECF No. 1, p. 6. He claims that he was seen by Nurse Swan on May 24, 2017, and a physician on June 26, 2017, who will verify that he had a knot on his leg. Moore alleges that Swan prescribed Motrin for his leg, which proved ineffective. *Id.*, p. 7. He claims that he experienced continuing pain and suffering on and off for over a year until he was seen. Moore asks that defendants be terminated from employment and seeks compensatory damages of $1,000,000.00 from each defendant. *Id.*, pp. 7-8.

On October 30, 2017, Moore filed a pleading captioned as "additional evidence in support." ECF No. 10. Construed as a supplemental complaint, Moore seemingly complains that his complaints of ongoing problems with his severe stomach pains are being dismissed by the institution.[4] *Id.* Moore additionally complains that he had a negative drug interaction to medications given for his leg pain and constipation, resulting in an increase in stomach pain and his admission to the prison infirmary in July of 2017. ECF No. 16.

## II. Discovery and Injunctive Relief Requests

Moore filed a "supplement motion" indicating that he also wanted to sue one of the defendants for medical malpractice and attached to it several written interrogatories he wanted that defendant to answer. ECF 16. Further, Moore requests an injunction, stating that NBCI is refusing to disclose his medical records, which are crucial to his ability to file an opposition to any motions for summary judgment. ECF No. 18. He seeks results from testing done in July, October, and November of 2017. *Id*. In addition, Moore seeks injunctive relief to force NBCI'S Medical Department to respond to his sick-call slips concerning breathing problems and severe

---

[4] The attached exhibit, however, concerns Moore's general claims that he is being housed in a "gang-infested" prison. ECF No. 10-1.

leg and stomach pains. ECF No. 27. He requests a transfer to another facility, claiming that the medical staff is retaliating against him for filing this action.[5] *Id*.

The medical defendants oppose these requests. ECF Nos. 17, 19 & 28. They claim that as no scheduling order has been issued in this case, Moore is not entitled to discovery. They additionally argue that Moore is being seen on a frequent basis and his medical concerns are being addressed. ECF No. 28. The medical defendants attach his radiology, colonoscopy, and esophagogastroduodenoscopy reports, as well as Moore's Dietary Change forms and medical site consults since September 2017. ECF No. 28-1 to ECF No. 28-3.

Moore's interrogatories are improper and not within the scope of this lawsuit, which complains of federal constitutional violations; consequently, Moore's supplement motion will be denied. Moreover, his first injunctive relief request, seemingly filed under Rule 56(d), shall be denied. In the absence of a Scheduling Order, the parties are not ordinarily entitled to engage in discovery. Discovery may not commence before defendants have answered or otherwise responded to the complaint, and then only after a scheduling order has been issued by this court. *See* Local Rule 104.4 (D. Md. 2016). Ordinarily, summary judgment is inappropriate "where the parties have not had an opportunity for reasonable discovery." *E. I. du Pont de Nemours and Co. v. Kolon Industries*, 637 F.3d 435, 448-49 (4th Cir. 2011). However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)).

---

[5] Moore later complains that he is not receiving his liquid diet. ECF No. 29.

To raise adequately the issue that discovery is needed, the non-movant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f)). If a non-moving party, however, believes that further discovery is necessary before consideration of summary judgment, the party fails to file a Rule 56(d) affidavit at his peril, because "'the failure to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'" *Harrods*, 302 F.3d at 244 (citations omitted). But, even a non-moving party's failure to file a Rule 56(d) affidavit cannot obligate a court to issue a summary judgment ruling that is obviously premature.

Where, as here, no scheduling order has been issued, Moore has been provided extensive medical records, including the test reports he seeks, and he has failed to demonstrate that he cannot fashion opposition responses to defendants' dispositive motions, Moore has no entitlement to the discovery he seeks. Nor has he shown an appropriate basis for injunctive relief.

### III. Defendants' Responses

Defendant Bishop indicates that Moore's verified medical records reflect that he was routinely seen in the Chronic Care Clinic (CCC) and over the course of a one-year period he submitted fourteen (14) sick-call slips. In response to those requests, on March 13, 2016, he received a physical. ECF No. 12-3, pp. 10-11. On September 8, 2016, he complained of a rotten wisdom tooth and requested dental care. *Id*., pp. 53 & 55. On May 22, 2017, Moore's sick-call request discussed breathing problems and leg pain. *Id*., pp. 56, 58 & 61, 63-66, & 68.

Bishop maintains that the majority of Moore's sick-call slips involved complaints of stomach pains and constipation. The medical record shows that he was seen and treated for constipation. *Id.*, pp. 15-16, 18-19, 21-22, 24-25, 27-29, 31-33, 38-39, 41, 48-49, & 54. In addition, medical staff noted no respiratory abnormality or musculoskeletal pain, aside from left knee tenderness. *Id.*, pp. 4, 11-12, 18-19, 24-25, 27-28, 32-33, 38, 42-43, & 48-49.

According to the medical records furnished by Bishop, Moore first complained of knee pain on June 26, 2017. The medical provider noted that Moore had a full range of motion (ROM). X-ray results were unremarkable. Moore received a referral for physical therapy and the physician considered an orthopedic referral. ECF No. 12-3, pp. 31-34, 36-37, & 42-44. Moore received physical therapy on August 3 and August 31, 2017. *Id.*, p. 46-47.

Moore filed an ARP on January 17, 2016, complaining that medical staff had neglected his verbal requests for treatment for a continuing painful knot behind his left knee and a breathing problem. The ARP was forwarded to the medical contractor to complete the ARP investigation. ECF No. 12-2, pp. 3-4 & 6-8. The institutional response indicated that Moore's ARP was subject to dismissal because Moore had failed to file sick-call requests regarding the knot in his leg. *Id.*, p. 3. The Division of Correction Headquarters investigation of the ARP, occurring in May of 2016, reviewed the grievance and dismissed it, again finding that Moore had not filed a sick-call slip regarding the knot on his leg or breathing difficulties. *Id.*, pp. 11-13. Moore's appeal to the Inmate Grievance Office was administratively dismissed. *Id.*, pp. 14 & 17.

Warden Bishop maintains he plays no role in providing medical care at NBCI and he has no authority to direct, order, or recommend medical treatment for an inmate. ECF No. 12-4,

Bishop Decl. He affirms that, as the Warden, he relies on the assessments and judgments of the trained medical contractors when responding to ARPs, and he did not hinder or interfere with Moore's medical treatment. *Id*.

The medical defendants claim that Moore's complaints that he has received no treatment for his alleged breathing problems, knot on his leg, and stomach pains is unfounded. ECF No. 21. The medical defendants first note that this court had previously addressed Moore's claims that he had experienced breathing problems in *Moore v. Warden*, Civil Action No. JKB-16-2410 (D. Md.) and had determined that Moore had failed to show that his respiratory system had been compromised. ECF No. 21-2. Secondly, they note that although Moore was repeatedly seen by healthcare staff in 2016 and 2017, he never made a complaint about the knot on his leg, until June 26, 2017. ECF No. 21-5, pp. 22-23. They observe that prior to that claim, he was observed to have a steady gait. Moore's sick-call requests did note a knot on his leg on May 22, May 24, and June 5, 2017, but the medical defendants argue that when seen by medical staff, Moore did not raise any issues regarding his leg. ECF No. 21-6, pp. 5-7.

Medical defendants maintain that in response to his June 26, 2017, complaint, an x-ray was ordered and pain medication (Motrin) was prescribed. X-rays of the left knee and abdomen, completed on July 3 and August 4, 2017, were negative. ECF No. 21-7, pp. 2-6. Moore was seen on July 11, 2017, the x-rays were reviewed, and he was referred for physical therapy. ECF No. 21-5, p. 24. On July 24, 2017, Moore was again seen, complaining that he suffered from chronic knee pain as a result of an old football injury and subsequently developed a knot on the lateral side of his left knee, which was diagnosed as a possible meniscal cyst. ECF No. 21-5, p. 27. Moore underwent a physical therapy evaluation and received therapy recertification four

7

weeks later. Defendants state that he was to continue therapy for "6 sessions for optimum functional outcome." *Id*., pp. 37 & 42.

The medical defendants further maintain that there are no medical records documenting Moore's complaints about breathing problems in January of 2016, and when examined throughout 2016, his respiratory system, or oxygen levels, was found to be normal, with no cough or audible wheezing. ECF No. 21-5. When Moore did complain about breathing problems in 2017, he was seen and offered no subjective respiratory complaints. Further, when his subjective claims of breathing problems were offered, his respirations were found to be "even and unlabored." *Id*.

Moore's complaints regarding constipation and stomach pain are well documented in his medical record. He was examined and prescribed magnesium citrate and Colace. Additional complaints resulted in a prescription for a fiber supplement, anti-gas medication, stool softener, and Motrin for pain. Further complaints resulted in an abdominal x-ray and Moore was given a laxative to promote a bowel movement. The x-ray found evidence of constipation, but no evidence of bowel dilation, obstruction, or a foreign body. Moore was continued on a plan of care including medications and increased water intake. *Id*.

The medical defendants argue that in spite of this treatment for constipation, Moore's subjective symptoms continued. On July 25, 2017, he was admitted to the prison infirmary after complaining of not having a bowel movement for one week. Once in the infirmary, he reported a bowel movement and indicated he felt much better. *Id.*

### IV. Moore's Oppositions

In his opposition responses, Moore claims that he has identified witnesses who will testify as to his left leg and Nurse Self's falsified medical document. He also claims that the Warden was aware of his medical complaints due to his filing of ARPs and he has not been provided "the level of care that a treating physician himself believes is necessary . . . ." ECF No. 15. In his second opposition, Moore again complains he was given contraindicated pain medication, which resulted in further stomach problems on or about July 24, 2017. ECF No. 23. He accuses prison physicians and nurses of lying in their reports regarding his pain and the prescribed medication. He argues that he was misdiagnosed and treated for indigestion, not for an ulcer, and it took several months for medical personnel to properly treat him with a colonoscopy and gastrointestinal surgery, which he received in November of 2017.[6] ECF No. 23.

## V. Applicable Legal Standards

### A. Motion for Summary Judgment

Because defendants have filed and relied on declarations and exhibits attached to their dispositive motions, their motions shall be treated as summary judgment motions. Summary judgment is governed by Federal Rule of Civil Procedure 56(a), which provides in part:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

---

[6] Attached to his second opposition is Moore's running chronology of sick-call slips, medical visits, ARPs, and sick-call slip documentation. ECF No. 23-1.

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting former Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). Because plaintiff is self-represented, his submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But, the court must also abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993), and citing *Celotex Corporation v. Catrett*, 477 U.S. 317, 323–24 (1986)).

In *Anderson*, the Supreme Court explained that in considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248. Thus, "the judge must ask himself not whether he thinks the

evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id*. at 252.

The moving party bears the burden of showing that there is no genuine issue as to any material fact. No genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof. *See Catrett*, 477 U.S. at 322-23. Therefore, on those issues on which the nonmoving party has the burden of proof, it is his or her responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial.

**B.    Injunctive Relief**

The purpose of a temporary restraining order ("TRO") or a preliminary injunction is to "protect the status quo and to prevent irreparable harm during the pendency of a lawsuit [and] ultimately to preserve the court's ability to render a meaningful judgment on the merits." *In re Microsoft Corp. Antitrust Litig.*, 333 F.3d 517, 525 (4th Cir. 2003), *abrogated on other grounds by eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006). A preliminary injunction is distinguished from a TRO only by the difference in notice to the nonmoving party and by the duration of the injunction. *U.S. Dep't of Labor v. Wolf Run Mining Co.*, 452 F.3d 275, 281 n.1 (4th Cir. 2006) (comparing Fed. R. Civ. P. 65(a) with Fed. R. Civ. P. 65(b)). The substantive standards for granting a TRO or a preliminary injunction are thus identical. To obtain a TRO or a preliminary injunction, a plaintiff must establish that (1) he is likely to succeed on the merits, (2) he is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in his favor, and (4) an injunction is in the public interest. *Winter v. Natural Res.*

*Defense Council, Inc.*, 555 U.S. 7, 20 (2008); *see Dewhurst v. Century Aluminum Co.*, 649 F.3d 287, 290 (4th Cir.2011). Because a preliminary injunction is "an extraordinary remedy ... [it] may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22.

## VI. Analysis

**A.     Medical Claims**

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F.3d 630, 633 (4th Cir. 2003) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). "Deliberate indifference is a very high standard – a showing of mere negligence will not meet it . . . [T]he Constitution is designed to deal with deprivations of rights, not errors in judgments, even though such errors may have unfortunate consequences . . . To lower this threshold would thrust federal courts into the daily practices of local police departments." *Grayson v. Peed*, 195 F.3d 692, 695-96 (4th Cir. 1999).

Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Objectively, the

medical condition at issue must be serious. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care). Proof of an objectively serious medical condition, however, does not end the inquiry.

The subjective component requires "subjective recklessness" in the face of the serious medical condition. *See Farmer*, 511 U.S. at 839-40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Va. Beach Corr. Center*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844). If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted." *See Farmer*, 511 U.S. at 844. Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *See Brown v. Harris*, 240 F.3d 383, 390 (4th Cir. 2000) (citing *Liebe v. Norton*, 157 F.3d 574, 577 (8th Cir. 1998)) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken).

In essence, for plaintiff to prevail, the treatment rendered must be so grossly incompetent or inadequate as to shock the conscience or to be intolerable to fundamental fairness. *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990) (citation omitted), *overruled in part on other grounds by Farmer*, 511 U.S. at 837. "Deliberate indifference may be demonstrated by either actual intent or reckless disregard." *Id*. Reckless disregard occurs when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of

13

facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer*, 511 U.S. at 837. Thus, a health care provider must have actual knowledge of a serious condition, not just knowledge of the symptoms. *Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998). Mere negligence or malpractice does not rise to a constitutional level. *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975); *Donlan v. Smith*, 662 F. Supp. 352, 361 (D. Md. 1986) (citing *Estelle v. Gamble, supra*, 429 U.S. at 106).

The right to treatment is "limited to that which may be provided upon a reasonable cost and time basis and the essential test is one of medical *necessity* and not simply that which may be considered merely *desirable*." *Bowring v. Godwin*, 551 F.2d 44, 47-48 (4th Cir. 1977). The record evidence indicates that plaintiff's requests for treatment were considered and his needs addressed. The delays that have occurred do not appear to be deliberate, nor have they resulted in harm to plaintiff. To the extent some of plaintiff's complaints have gone unaddressed, "an inadvertent failure to provide adequate medical care does not amount to deliberate indifference." *Estelle v. Gamble*, 429 U.S. at 105-06. Moore's numerous grievances are reflective of his frustration, but "[d]isagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged." *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985) (citing *Gittlemacker v. Prasse*, 428 F.2d 1, 6 (3rd Cir. 1970)). There are no exceptional circumstances alleged in this case.

Moore obviously has a disagreement with the diagnoses, consistency, and length of time it took to properly diagnose his conditions, an avowed breathing problem, stomach issues, and growth on his left leg. He has been called upon to refute the medical record to show that his medical complaints were ignored. He has failed to do so. The materials show that Moore was

seen by nurses and physicians and received conservative treatment including, but not limited to, medication, physical therapy, and x-rays. Further, the medical defendants' opposition to Moore's injunctive relief request shows that Moore was assigned to the prison infirmary for close monitoring and underwent a fiber optic colonoscopy and esophagogastroduodenoscopy[7] (EGD) for his abdominal pain and constipation. He was diagnosed with antral gastritis, no ulcer was noted, and his colonoscopy proved to be negative. Moore was placed on a liquid diet for a limited period and was then referred for a 2,100-calorie diabetic diet for one year. He was prescribed Protonix,[8] Ensure, and Carafate. ECF No. 28-1, ECF No. 28-2 & ECF No. 28-3. No deliberate indifference has been demonstrated. The medical defendants are otherwise entitled to summary judgment in this case and injunctive relief is not warranted. Judgment will be entered in favor of the medical defendants.

**B.     Respondeat Superior**

It is well established that the doctrine of respondeat superior does not apply in § 1983 claims. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under § 1983); *see also Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001) (no respondeat superior liability in a *Bivens* suit). Liability of supervisory officials "is not based on ordinary principles of respondeat superior, but rather is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v.*

---

[7] An esophagogastroduodenoscopy is an endoscopic examination of the interior of the esophagus, stomach, and initial portion of the duodenum. *See* https://medical-dictionary.thefreedictionary.com/EGD.

[8] Protonix or Pantoprozole is used to treat certain stomach and esophagus problems. It works by decreasing the amount of acid the stomach makes. It helps heal acid damage to the stomach and esophagus, and it helps prevent ulcers. *See* https://www.webmd.com/drugs/2/drug-18142/protonix-oral/details.

*Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)). The imposition of medical liability on prison administrators requires a showing that "(1) the supervisory defendants failed promptly to provide an inmate with needed medical care, (2) that the supervisory defendants deliberately interfered with the prison doctors' performance, or (3) that the supervisory defendants tacitly authorized or were indifferent to the prison physicians' constitutional violations." *Miltier*, 896 F.2d at 854 (internal citations omitted).

Moore has failed to point to any personal conduct by defendant Bishop. His effort to hold this prison administrator liable based on his supervisory role is unavailing. Bishop is entitled to have the complaint dismissed against him.[9]

## C. Appointment of Counsel

Moore asks that counsel be appointed in this case under 28 U.S.C. § 1915(e)(1). ECF No. 7. He claims he is unable to afford counsel, his imprisonment and limited access to the law library greatly limit his ability to litigate the case, the issues in this case are complex, he has limited knowledge of the law, and counsel would be in a better position to present evidence and to cross-examine witnesses should the case proceed to trial. *Id.*

Although 28 U.S.C. § 1915(e)(1) permits a court to request an attorney to represent an indigent litigant, it "does not authorize the federal courts to make coercive appointments of counsel." *Mallard v. U.S. District Court for the S. Dist. of Iowa*, 490 U.S. 296, 309–10 (1989). A district court need not request an attorney's assistance pursuant to § 1915(e)(1) unless the case presents complex issues or exceptional circumstances. *See Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984), *abrogated on other grounds by Mallard*, 490 U.S. at 298. Exceptional

---

[9] For similar reasons, the complaint against "John Doe Commissioner (DOC)" shall be dismissed.

circumstances include a litigant who "is barely able to read or write," *id*. at 162, or clearly "has a colorable claim but lacks the capacity to present it," *Berry v. Gutierrez*, 587 F. Supp. 2d 717, 723 (E.D. Va. 2008).

This case presents no clear, exceptional circumstances warranting representation pursuant to § 1915(e)(1). Moore has ably filed his self-represented complaint and numerous pleadings and has failed to show a particular need or exceptional circumstances requiring the assistance of a trained practitioner. Therefore, the motion to appoint counsel shall be denied.

### VII. Conclusion

For the above-noted reasons, defendants' motions to dismiss or, in the alternative, motions for summary judgment, construed as motions for summary judgment, shall be granted. Moore's injunctive relief requests shall be denied. The medical defendants' motions to strike shall be granted. The complaint against "John Doe Commissioner (DOC)" shall be dismissed. A separate Order follows.

Dated this 9th day of May, 2018.

BY THE COURT:

/s/
James K. Bredar
Chief Judge